IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEIZURE OF

Funds up to the amount of $89,292.50 held in
BB&T Bank Account Number
1430001294316 in the name of Donna Clark,

Case No. 1:21-MJ- 139

And

**Filed Under Seal**

Funds up to the amount of $15,000.00 held in
First Volunteer Bank Account Number
2000294039 in the name of Donna J. Clark.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEIZURE WARRANT

I, David Kukura, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a seizure warrant for the following:

    a. Funds up to the amount of $89,292.50 held in BB&T Bank Account Number 1430001294316 in the name of Donna Clark; and

    b. Funds up to the amount of $15,000.00 held in First Volunteer Bank Account Number 2000294039 in the name of Donna J. Clark.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for almost 32 years. I am a Certified Public Accountant, and prior to joining the FBI, I worked for a public accounting firm. As a Special Agent, my duties and responsibilities have included conducting criminal investigations of individuals and business

Page 1 of 10

entities for possible violations of federal laws, particularly those laws found in Title 18, United States Code. From November 1989 to June 2015, I was assigned to the FBI's Minneapolis, Minnesota, office, during which time I was assigned to a White Collar Crime squad with responsibility for investigating violations such as Mail Fraud, Fraud By Wire, Bank Fraud, and Money Laundering. Since July 2015, I have been assigned to the FBI's Chattanooga, Tennessee, office where I have been assigned to work primarily on White Collar Crime investigations. During my career with the FBI, I have participated in numerous financial fraud investigations, arrests, and searches. I have participated in the execution of numerous search warrants for documents, records, and proceeds from illegal activities and have participated in the subsequent investigation and analysis of evidence seized pursuant to those warrants. I have also had experience interviewing defendants, witnesses, informants, and other persons who have had personal knowledge of the amassing, spending, converting, and concealing of proceeds gained from illegal activity.

3. The following information is based on my own personal observations and knowledge. This affidavit does not contain all of the information known to law enforcement regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (bank fraud); 18 U.S.C. § 1344 (wire fraud); 18 U.S.C. § 1957 (money laundering); and 18 U.S.C. § 1960, (operation of an unlicensed money transmitting business), have been committed by Donna J. Clark ("Clark") who is acting as a money mule for individuals involved in illegal activity.

5. A "money mule" is someone who transfers illegally acquired money on behalf of or at the direction of another. Money mules are often recruited via an on-line romance scheme or on-line job scheme. Criminals use money mules to move money electronically through bank accounts. They are asked by the criminal actors to use an established bank account, or to open a new bank account, to receive money from someone they have never met in person. They are also asked to move physical currency, or to assist the movement of money through a variety of other methods such as wire the money into a third-party bank account; "cash out" the money received, via currency or cashier's checks; convert the money to virtual currency (such as Bitcoin); convert the money to prepaid cards (such as debit cards or gift cards); send the money through a money service business (such as Western Union or Money Gram) or a money transmitting app (such as Venmo or Zelle); or conduct a combination of these actions. The money mule may be told to keep a portion of the money being transferred. Money mules add layers to the money trail from a victim to a criminal actor.

6. Money mules can be witting and complicit in the transfer of the illegally acquired money. The money mule may ignore obvious red flags or act willfully blind to the money movement activity. The money mule may have been warned about the activity by a bank employee or law enforcement. The money mule may serially open bank accounts because prior bank accounts had been closed by banks due to the suspicious activity in the accounts. The money mule's motivation may be financial gain or misplaced loyalty to a criminal actor.

7. Criminal actors obtain money through various illegal acts, and they need someone to move this money at their direction. Common criminal activities include romance scams, work from home scams, mystery shopper scams, lottery scams, Business Email Compromise, reshipping scams, IRS or law enforcement impersonation scams, credit card fraud, and drug

trafficking. Money mules help criminals launder their criminally derived proceeds by adding layers of recipients to the money trail; and these layers complicate and negatively impact the ability of law enforcement to accurately trace the money from a specific victim to a criminal actor.

8. Since my assignment to the FBI's Chattanooga office, I and other Agents, in coordination with the U.S. Attorney's Office for the Eastern District of Tennessee, have attempted to proactively identify, interview, and educate money mules about their participation in illegal activity so that they will stop engaging in such activity. Since the criminal actors are typically located in foreign countries, frequently in Africa, they are often outside the reach of criminal prosecution in the United States. Thus, the goal of identifying and talking to a money mule is not to prosecute the money mule; but instead, the goal is to protect potential victims in the United States, and to disrupt the criminal actors' activities by eliminating the money mule as a conduit for laundering the criminal actor's illegally derived proceeds. However, when the money mules are interviewed, they are informed that they are knowingly or unknowingly participating in activity which may be a violation of both Federal and state laws; that they are now on notice that they are engaging in illegal activity, such as Fraud By Wire, Operation of an Unlicensed Money Transmitting Business, and Money Laundering; and that if they continue the activity, they subject themselves to criminal prosecution.

9. Your Affiant's Affidavit in Support of an Application for a Search Warrant (Case NO. 1:21-MJ-138) is incorporated herein by reference and provides a history of this investigation.

## PROBABLE CAUSE

10. Clark has maintained several bank accounts during the course of her criminal activity. She has used those accounts to receive deposits, send funds, and launder money for unlawful activities. When I interviewed Clark on June 28, 2021, Clark told me that Regions Bank and Simply Bank had closed her bank accounts based upon suspicious activities.

11. Clark has continued to engage in the very financial transactions which I warned her to stop during her interview on June 21, 2021.

12. Within the last month, Clark has opened at least two new accounts, one at First Volunteer Bank and another at BB&T Bank. ("FVB")



13. On July 17 and 18, 2021, the Confidential Human Source (CHS) told me the following:

    a. Clark recently met another man named Steven Anderson on-line.

    b. On July 15 or 16, 2021, Anderson wired $89,292.50 to Clark's BB&T Account.

    c. Clark has a bank phone app on her cellphone, and Clark showed the CHS the activity in her BB&T account. There were two wire transfers of $50,000 and $39,292.50.

    d. The $50,000 wire transfer had what might be a wire transfer code of "20210715-00008516INCO", and the $39,292.50 wire transfer indicated it was from "Merchfundi Fora Financial B".

    e. Clark had already withdrawn $15,000 by writing a check payable to herself which Clark then deposited into Clark's FVB Account. Clark also withdrew $500 cash

at an ATM; so when Clark showed CHS the account activity on the evening of July 16, 2021, the balance in the BB&T account was $73,368.13.

    f. When the CHS spoke to Clark on July 17, 2021, Clark told the CHS that Clark went to BB&T on July 17, 2021 and obtained a $20,000 cashier's check which Clark plans to deposit to her FVB Account on July 19, 2021, and that she is also going to get another $20,000 cashier's check on July 19, 2021 and deposit it to her FVB Account. Clark said that Anderson instructed her to do this.

    g. Clark told CHS that Clark doesn't know who the two wire transfers actually came from, be it Anderson or someone else.

14. On July 19, 2021, I received information from First Volunteer Bank (FVB), that Clark's FVB account number is 2000294039 in the name of "Donna Clark", $15,000 was recently deposited into Clark's FVB Account and the current balance is approximately $16,000.

15. I also received information from BB&T Bank on July 19, 2021, that Clark's account number is 1430001294316 in the name of Donna J. Clark, that there were recent deposits of $50,000 and about $39,000 via wire transfer and ACH credit, and that Clark withdrew $20,000 on July 17, 2021.

16. On July 19, 2021, I again interviewed Clark. Clark admitted that she transferred $15,000 from her BB&T Account into her FVB Account. She also told me she obtained a $20,000 cashier's check from BB&T that she had planned on depositing into her FVB Account. Clark gave me the cashier's check, issued July 17, 2021 by BB&T Bank, Check Number

Page 6 of 10

Case 1:21-mj-00139-SKL    Document 4    Filed 07/20/21    Page 6 of 10    PageID #: 10

1003749082. Clark further told me that she withdrew $500 from her BB&T Account through an ATM, spent some of the cash, and had the remainder in her home.

17. When I interviewed Clark on July 19, 2021, she also admitted that she continued to be involved in the fraud and the money laundering in spite of my warnings to her on June 21, 2021.

18. Insofar as criminal forfeiture is concerned, I know that a protective order would be inadequate to ensure the preservation of the funds in the above-listed bank accounts and the vehicle, because funds stored electronically in bank accounts can be easily and almost instantaneously transferred from remote locations, and that financial institutions do not always act promptly to make all of their employees aware of restraints that are placed on such funds; moreover vehicles can be easily transferred or hidden.

19. Moreover, with respect to civil forfeiture of fungible property, such as funds deposited in an account at a financial institution, I know that it is unnecessary "for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and that any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture." 18 U.S.C. § 984.

20. With respect to the pre-indictment seizure of property, I know that the Court is authorized to issue a seizure warrant if the Court determines there is probable cause to believe that the subject property is forfeitable in the event of the possessor's conviction and that a protective order would be insufficient to assure the availability of the property for forfeiture upon conviction. *See* 21 U.S.C. § 853(f); *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008)

(explaining that the pre-trial restraint of *tainted* assets that are subject to forfeiture is permissible; holding that pre-trial restraint of untainted or substitute assets is unauthorized).

21. Said bank accounts are subject to seizure to United States pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(e) and (f) by 18 U.S.C. § 982(b)(1). Said bank accounts are also subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) & (D) and criminal forfeiture pursuant to 18 U.S.C. § 982(a)(2), on the grounds that the funds contained in the above-listed accounts constitute proceeds that are directly traceable to offenses in violation of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud). The bank accounts are further subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and criminal forfeiture under 18 U.S.C. § 982(a)(1) as they contain proceeds that are directly traceable to and facilitated the commission offense in violation of 18 U.S.C. § 1957 (money laundering) and 18 U.S.C. § 1960 (unlicensed money transmitting business). For the reasons set forth above, probable cause exists to seize the properties.

22. As such, the United States seeks the issuance of warrants providing seizures of the above-listed bank accounts which contain funds constituting proceeds or are traceable to proceeds of wire fraud, bank fraud, and unlicensed money transmitting business violations and constitute proceeds that are involved in money laundering.

23. The events described herein, and the location of the businesses and properties in question occurred and are situated in the Eastern District of Tennessee and elsewhere.

24. Accordingly, pursuant to 18 U.S.C. § 981(b)(1)(3), "a seizure warrant may be issued . . . by a judicial officer in any district in which the forfeiture action against the property

may be filed under section 1355(b) of Title 28, and may be executed in any district in which the property is found." 18 U.S.C. § 981(b)(3).

## CONCLUSION

25. Based upon all the foregoing information, probable cause exists to believe that Donna Clark has committed violations of federal law including wire fraud, bank fraud, money laundering and operation of an unlicensed money transmitting business. Furthermore, I have probable cause to believe that the funds maintained in the bank accounts below are subject to seizure and forfeiture:

   a. Funds up to the amount of $89,292.50 held in BB&T Bank Account Number 1430001294316 in the name of Donna Clark; and

   b. Funds up to the amount of $15,000.00 held in First Volunteer Bank Account Number 2000294039 in the name of Donna J. Clark.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

FURTHER THIS AFFIANT SAYETH NOT

*[signature]*

David Kukura, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this 20th day of July, 2021

_____
Susan K. Lee
United States Magistrate Judge
Eastern District of Tennessee